IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| LATWANYA OLIVER, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| JUSTIN J. WHITE, in his individual capacity; | ) | CIVIL ACTION NO. 5:21-cv-434 |
| VANCE COUNTY SHERIFF CURTIS R. | ) | Jury Trial Demanded |
| BRAME; and WESTERN SURETY | ) | |
| COMPANY. | ) | |
| | ) | |
|     Defendants. | ) | |

NOW COMES Plaintiff Latwanya Oliver, by and through undersigned counsel and complains against Defendants Justin J. White, in his individual capacity, Vance County Sheriff Curtis R. Brame, and Western Surety Company as follows:

## INTRODUCTION

This case arises from Defendant Justin J. White's unlawful and unconstitutional seizure and use of excessive force on Latwanya Oliver, during an alleged arrest that occurred on October 22, 2018, wherein Ms. Oliver suffered, among other things, a broken arm. At all times relevant to this action, Defendant Justin J. White was employed by the Vance County Sheriff's Office. Defendant Vance County Sheriff knew that Defendant Justin J. White had a habit of violating its policies and procedures, lying to his supervising officers, and disobeying the Sheriff's direct orders. However, Defendant Justin J. White was not disciplined for his repeated violations and defiance. Instead, the Vance County Sheriff permitted Defendant Justin J. White to continue patrolling Vance County, putting its citizens, like Latwanya Oliver, at risk.

1

## PARTIES

1. Plaintiff Latwanya Oliver ("Ms. Oliver") is a citizen and resident of Vance County, North Carolina.

2. Upon information and belief, Defendant Justin J. White ("Defendant White") is a citizen and resident of Mecklenburg County, North Carolina. At all times relevant to this action, Defendant White was a sworn deputy of the Vance County Sheriff's Office ("VCSO") acting under color of state law. Defendant White is sued in his individual capacity.

3. Defendant Vance County Sheriff Curtis R. Brume ("Defendant Sheriff") is sued in his official capacity as the duly elected Sheriff of Vance County. Defendant Sheriff was elected as Sheriff of Vance County in November 2018, after former Sheriff Peter White retired. At all times relevant to this Complaint, Peter White served as the Vance County Sheriff. However, Defendant Sheriff is the proper party to this action pursuant to Fed. R. Civ. P. 25(d).

4. Defendant Western Surety Company ("Defendant Western Surety") is a South Dakota corporation that is duly licensed to conduct business in the State of North Carolina. Defendant Western Surety issues official sheriff's bonds as required by N.C. Gen. Stat. § 162-8. Defendant Western Surety is sued as the surety on Defendant Sheriff's official bond.

5. Defendant Western Surety issued the official bond furnished by Defendant Sheriff in the amount of $25,000 as required by N.C. Gen. Stat. § 162-8. Upon information and belief, the official bond was in effect at the time of the events alleged herein. Defendant Sheriff is sued as the principal on the official bond pursuant to N.C. Gen. Stat. § 58-76-5.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims for relief asserted herein arise, in part, under the United States

Constitution and federal law, pursuant to 42 U.S.C. §§ 1983 and 1988. This action also arises in part under the North Carolina Constitution and the common law of the State of North Carolina.

7.     This Court has supplemental jurisdiction over all state law claims alleged against all defendants pursuant to 28 U.S.C. § 1367 because all state law claims asserted herein arise from a common nucleus of operative facts as those giving rise to Ms. Oliver's federal claims, as described herein below.

8.     Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## WAIVER OF GOVERNMENTAL IMMUNITY

9.     Defendants Sheriff, and any and all agents, employees, officers and/or deputies have waived sovereign immunity and/or governmental immunity for the purpose of Ms. Oliver's claims through the purchase of a surety bond issued by Defendant Western Surety pursuant to N.C. Gen. Stat. § 58-76-5. Defendant Sheriff, and any and all agents, employees, officers, or deputies have waived or further waived sovereign and/or governmental immunity to the extent Defendant Sheriff on the dates relevant hereto was insured by one or more policies of liability insurance purchased pursuant to N.C. Gen. Stat. § 153A-435 or participates in a government risk pool pursuant to N.C. Gen. Stat. § 58-23, or maintains a funded reserve, and to such extent, Defendant Sheriff have waived any official, sovereign, qualified or governmental immunity to which they might otherwise be entitled in his official capacity.

## FACTUAL ALLEGATIONS

Defendant Sheriff is the chief law enforcement officer and final policymaking authority for Vance County, North Carolina. Defendant Sheriff has exclusive right to hire, discharge, and

supervise the employees in his office. N.C. Gen. Stat. § 153A-103.

10.     Upon information and belief, Defendant White applied to be a Vance County sheriff's deputy in 2017. Prior to being hired, the VCSO conducted a background investigation of Defendant White and learned that he had been fired from three previous jobs--one as a state prison guard and two as a campus security officer. Based on this information, the VCSO's hiring panel recommended against hiring Defendant White.

11.     Upon information and belief, Defendant Sheriff ignored the hiring panel's recommendation and hired Defendant White anyway. Defendant White began working as a VCSO patrol deputy on or around June 5, 2017.

12.     Upon information and belief, additionally, Defendant Sheriff assisted Defendant White in obtaining a training waiver from the North Carolina Training Standards Commission (the "Commission"). Upon information and belief, Defendants Sheriff and White requested the Commission to consider Defendant White's prior law enforcement "experience" and credit on-the-job work hours as his law enforcement training, in lieu of requiring Defendant White to attend Basic Law Enforcement Training ("BLET"). Defendant White was granted the training waiver and, therefore, did not attend BLET.

13.     Upon information and belief, shortly after he was hired, it became apparent that Defendant White refused to follow Defendant Sheriff's policies and procedures. He also repeatedly disobeyed direct orders from his supervisors.

14.     Upon information and belief, Defendant Sheriff instructed his deputies to investigate crimes, respond to calls, and serve papers. Instead, in direct defiance of the Sheriff's orders, Defendant White spent an excessive amount of time stopping motorists for minor traffic offenses.

15.     Upon information and belief, Defendant White's superiors informed Defendant White that he was not to stop citizens for minor traffic violations and was to stop motorists for serious traffic violations only.

16.     Upon information and belief, Defendant White ignored Defendant Sheriff's policies and orders by continuing to stop motorists for minor traffic infractions. Not only did Defendant White stop and ticket motorists, in his first six (6) months, Defendant White arrested eight citizens for minor traffic violations. Defendant White received a written warning regarding his repeated violation of Defendant Sheriff's policies and orders not to stop motorists for minor traffic violations.

17.     Upon information and belief, despite receiving the written warning, Defendant White continued to disobey Defendant Sheriff's policies and orders regarding minor traffic stops and, as a result, numerous Vance County citizens complained to the VCSO. Defendant White's supervisors continued to inform Defendant White that he was not authorized to conduct traffic stops for minor violations; however, Defendant White refused to obey.

18.     Upon information and belief, in February 2018, while discussing traffic stop policies and procedures, Defendant White became upset and was disrespectful to one of his direct supervisors. Because of his disrespectful conduct, Defendant White was suspended for five (5) days without pay. However, Defendant Sheriff did not discipline Defendant White for his continued violation of VCSO's policies and procedures.

19.     Upon information and belief, the very next month, in March 2018, Defendant White again stopped a motorist for a minor traffic violation. During the stop, Defendant White was involved in a traffic accident. Defendant White's supervisors again noted that he had been told not to make minor traffic stops, but that he continued to do so.

5

20.     Upon information and belief, though Defendant Sheriff knew that Defendant White continued to violate his orders and orders from his direct supervisors, Defendant Sheriff did <u>not</u> discipline Defendant White for any of his violations. Rather, Defendant Sheriff permitted Defendant White to continue patrolling Vance County in the same manner as he always had.

21.     On the evening of Sunday, October 21, 2018, Defendant White approached Ms. Oliver at a gas station and yelled at her that she had been speeding. However, Defendant White left the gas station without writing Ms. Oliver a speeding ticket.

22.     Upon information and belief, after his exchange between Ms. Oliver, Defendant White conducted a background check on Ms. Oliver and located warrants for her arrest that were over a year old. Upon information and belief, Defendant White did not verify that the warrants had been properly obtained, nor did he verify that the warrants remained outstanding.

23.     At approximately 1:00 to 2:00 a.m. on October 22, 2018, Defendant White went to Ms. Oliver's home and knocked on her door, supposedly to arrest her based on dated warrants he had located after their exchange at the gas station the previous day. Defendant White did not announce that he was a law enforcement officer with the VCSO, so Ms. Oliver did not answer the door.

24.     Later that evening, at approximately 8:00 p.m. on October 22, 2018, Defendant White returned to Ms. Oliver's home. This time, he knocked on her door and announced that he was a VCSO deputy. Ms. Oliver answered the door and was shocked to see Defendant White, whom she recalled from the gas station the previous night. Ms. Oliver asked why he was at her home, and Defendant White told her she was under arrest. Defendant White led Ms. Oliver from her home towards his patrol car. Ms. Oliver voluntarily walked with Defendant White, inquiring as to why she was being arrested. Defendant White did not at any time tell her the arrest charges.

25.     Ms. Oliver complied with Defendant White's instructions; she was not combative, nor did she attempt to resist arrest in any way. Ms. Oliver did, however, object to being placed in the back of Defendant White's patrol car. Because he did not show her an arrest warrant or copy of an arrest warrant, Ms. Oliver had no idea where Defendant White intended to take her and feared that Defendant White intended to do her harm. Ms. Oliver asked Defendant White to see an arrest warrant but he did not produce one or state the grounds for her arrest.

26.     Once they reached Defendant White's patrol car, Defendant White tried to forcefully shove Ms. Oliver into the car. Ms. Oliver out of fear immediately "went limp" and began to cry. Defendant White then slammed Ms. Oliver to the pavement. However, Defendant White threw Ms. White down with such force that he broke her left arm. Ms. Oliver lay on the ground, in handcuffs, and yelled for help. She repeatedly told Defendant White that her arm was broken. He replied, "there is nothing wrong with your arm."

27.     Upon information and belief, while Ms. Oliver lay on the ground with a broken arm and in handcuffs, Defendant White put out a radio call to other officers stating that <u>he</u> was in danger.

28.     Upon information and belief, approximately ten (10) minutes later, other officers arrived, including Defendant White's sergeant. Ms. Oliver immediately informed the officers that her arm was broken, and she needed medical help. The officers tried to lift Ms. Oliver from the ground but were unable to do so because of the extreme pain in her left arm.

29.     Upon information and belief, at the scene, Defendant White's sergeant concluded that Defendant was not in danger, cancelled the emergency nature of the call, and reported the incident as routine.

30.     Upon information and belief, Vance County EMS was called to the scene. After evaluation, EMS personnel confirmed that Ms. Oliver's left arm was fractured. Ms. Oliver was placed on a stretcher and transported to the Emergency Department at Maria Perham Health. Upon arrival at the emergency room, Ms. Oliver complained of severe pain in her left elbow and upper arm. X-rays revealed that she suffered from a left humerus fracture and received medical treatment as a result.

31.     Despite breaking her arm, Defendant White charged Ms. Oliver with obstruction of justice and assault on a law enforcement officer. These charges were subsequently dismissed.

32.     Upon information and belief, Defendant Sheriff investigated the incident between Defendant White and Ms. Oliver and concluded, among other violations, that Defendant White had used excessive force with Ms. Oliver because he slammed her to the ground and broke her arm. According to Defendant Sheriff, the slamming maneuver Defendant White used was not an approved subject control arrest technique as taught in BLET.

33.     Defendant White unlawfully seized Ms. Oliver when he without authority attempted to arrest Ms. Oliver on private property and attempted to arrest her without a valid warrant or a copy of a valid warrant. Defendant Oliver used excessive force when he slammed Ms. Oliver to the ground breaking her arm, even though Ms. Oliver was not resisting arrest and did not touch Defendant White at all. Defendant White unlawfully detained Ms. Oliver when he left her handcuffed on the ground with a broken arm while he waited for approximately ten (10) minutes for back up to arrive at the scene. Upon information and belief, Defendant Sheriff has admitted that Defendant White used excessive force with Ms. Oliver and terminated him as a result.

34. Upon information and belief, Defendant Sheriff was aware that Defendant White had been terminated from three (3) previous law enforcement positions and that the VCSO hiring panel recommended against hiring him—Defendant Sheriff disregarded this information and hired him anyway. For over a year, Defendant Sheriff turned a blind eye to Defendant White's blatant and repeated disregard of his its policies and orders, Defendant's repeated disregard for, and outright refusal to obey commands and directives from his supervising officers. Defendant Sheriff failed to discipline Defendant White for his egregious pattern of violations of the policies, procedures, and orders of the VCSO. Defendant Sheriff's failure to take any action to address Defendant White's unreasonably aggressive tactics meant Defendant White continued to police Vance County citizens undeterred. Because Defendant White was not disciplined for his repeated refusal to comply with orders, it was reasonably foreseeable that Defendant White's unrestrained actions could and, in fact did, result in harm to a Vance County citizen. Unfortunately, that citizen was Ms. Oliver.

35. Ms. Oliver brings this civil action pursuant to 42 U.S.C. §1983 against Defendant White for the use of excessive force against Ms. Oliver in violation of her due process rights under the Fourteenth Amendment.

36. Ms. Oliver brings this civil action against Defendant Sheriff for deliberate indifference to the inadequate hiring, training, supervision, and retention of Defendant White in light of his repeated violations of VCSO Sheriff policies, procedures, and orders.

37. Ms. Oliver brings this civil action against Defendant Sheriff for the state law claims of negligent hiring, supervision, and retention, and against Defendant White for the state law claims of negligent infliction of emotional distress, negligence, assault and battery, and false arrest.

9

38.     Ms. Oliver brings an official bond action under N.C. Gen. Stat. §58-76-5 against Defendants Sheriff and Western Surety Company.

39.     Ms. Oliver seeks to recover compensatory damages from Defendants, including, but not limited to, personal injuries of a broken arm, mental/psychological injuries, including a diagnosis of Post-Traumatic Stress Syndrome, anxiety, stress, fear of police, costs of medical treatment, permanent injuries and pain, costs and attorneys' fees. Ms. Oliver also seeks to recover punitive damages from Defendant White under federal law.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Excessive Force in Violation of the Fourth and Fourteenth Amendments**
*(Against Defendant White)*

40.     Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

41.     Ms. Oliver possessed a constitutional right under the Fourteenth Amendment to be protected from the use of excessive force against her. Defendant White violated this right when he slammed her to the pavement with such force that he fractured her left arm. Ms. Oliver yelled out and told Defendant White that her arm was broken. Defendant White ignored her cries for help and continued to twist her arms behind her back in order to handcuff her. Ms. Oliver continued to yell for help while laying face down on the pavement until additional VCSO deputies arrived at the scene and attempted to assist her approximately ten minutes later.

42.     Defendant White's use of force against Ms. Oliver was unreasonable given the totality of the circumstances, including but not limited to:

      a.     Defendant White's arrest of Ms. Oliver was based on a charge for a misdemeanor shoplifting offense, which was ultimately dismissed;

b.  When Defendant White informed Ms. Oliver she was under arrest, Ms. Oliver cooperated and walked with Defendant White to his patrol car;

c.  Ms. Oliver possessed no weapons, did not threaten to injure Defendant White, and posed no threat of harm to him or anyone;

d.  Ms. Oliver did not flee or attempt to flee;

e.  Upon information and belief, Defendant White is significantly larger than Ms. Oliver and could overpower her without slamming her to the ground;

f.  Defendant White used techniques to overpower Ms. Oliver that are not approved by BLET;

g.  The sheriff's office investigation concluded and admitted that Defendant White used excessive force; and

h.  Any other acts that are revealed through discovery.

43.  Based on the totality of the circumstances, a reasonable police officer could conclude that the amount of physical force Defendant White used with Ms. Oliver was unnecessary to effectuate her arrest and constituted excessive force in violation of her constitutional rights.

44.  Defendant White violated Ms. Oliver's constitutional rights during the course and scope of his employment with Defendant Sheriff.

45.  As a direct and proximate result of Defendant White's unconstitutional conduct, Ms. Oliver suffered personal injuries of a broken arm and continues to suffer injuries and damages.

46.  As a further direct and proximate result of Defendant White's unconstitutional conduct, Ms. Oliver has incurred, and continues to incur, damages including, but not limited to, personal injuries of a broken arm, pain and suffering of being handcuffed for ten minutes immediately after having her arm broken, difficulty sleeping, mental injuries of emotional distress,

humiliation, embarrassment, anxiety, mental anguish, including Post Traumatic Stress Disorder. Ms. Oliver has also incurred out of pocket expenses including but not limited to medical expenses and lost wages due to her having to miss work because of her injuries. Ms. Oliver is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs as a result of Defendant White's actions and deprivation of Ms. Oliver's constitutional rights.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Hiring and Training in Violation of the Fourth and Fourteenth Amendments**
(*Monell* *Claim Against Defendant Sheriff*)

47.     Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

48.     At all times relevant to this complaint, Defendant Sheriff, as the final policymaker, was responsible for establishing, enforcing, directing, and controlling the policies customs, practices, and procedures relative to law enforcement in Vance County. Specifically, Defendant Sheriff has final policymaking authority over the personnel decisions in his office.

49.     Defendant Sheriff, as the final law enforcement policymaking authority regarding hiring, supervising and discharging employees of the VCSO, made the following personnel decisions, which resulted in violations of Ms. Oliver's constitutional rights:

    a.   Defendant Sheriff hired Defendant White with full knowledge that he had been terminated from three (3) previous law enforcement positions;

    b.   Defendant Sheriff hired Defendant White against the recommendation of the VCSO's hiring panel;

    c.   Defendant Sheriff assisted Defendant White in obtaining a waiver from the Commission, excusing Defendant White from attending BLET;

    d.   Defendant Sheriff failed to discipline Defendant White for violating VCSO policy regarding stopping and arresting citizens for minor traffic violations even though

Defendant White continued to violate said VCSO procedures and direct orders from his supervisors;

e.  Defendant Sheriff failed to discipline Defendant White after he blatantly lied regarding engaging his emergency blue lights during a traffic stop, as is required by VCSO policies and procedures; and

f.  Defendant Sheriff allowed Defendant White to continue patrolling Vance County with full knowledge that he was untrained, that he habitually violated VCSO policies and procedures and disobeyed directives from his supervisors, and that he lied about following VCSO policies and procedures.

50.  Defendant Sheriff is solely responsible for the policies and procedures regarding the personnel decisions of the VCSO, and, therefore, Defendant Sheriff's personnel decisions constitute the official policy and custom of his office. Ms. Oliver's constitutional rights were violated as a direct and proximate result of Defendant Sheriff's personnel policies and customs as set forth hereinabove.

51.  It was reasonably foreseeable that a Vance County citizen, such as Ms. Oliver, could suffer constitutional injuries or personal injuries due to Defendant White's habitual propensity to ignore Defendant Sheriff's policies, procedures, and orders as well as orders from Defendant White's other superiors within the Sheriff's office. Because Defendant White was not disciplined for his defiant conduct that he displayed in the course and scope of his employment with the VCSO, it is reasonable to believe that Defendant White acted with unfettered discretion in carrying out his official duties as a VCSO during the course and scope of his employment.

52.  As a direct and proximate result of the policies, practices, and customs of the VCSO as determined by Defendant Sheriff, Ms. Oliver has incurred, and continues to incur, damages including, but not limited to, personal injuries of a broken arm, pain and suffering of being handcuffed for ten minutes immediately after having her arm broken, difficulty sleeping, mental injuries of emotional distress, humiliation, embarrassment, anxiety, mental anguish, including Post

Traumatic Stress Disorder. Ms. Oliver has also incurred out of pocket expenses including but not limited to medical expenses and lost wages due to her having to miss work because of her injuries. Ms. Oliver is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs as a result of Defendant White's actions and deprivation of Ms. Oliver's constitutional rights.

### THIRD CAUSE OF ACTION
**Negligent Infliction of Emotional Distress**
(*Against Defendant White*)

53.     Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

54.     Defendant White owed Ms. Oliver a duty of care, which required him to perform his law enforcement duties with reasonable care, which necessarily includes, without limitation, executing his duties in accordance with state and federal law.

55.     Defendant White breached his duty of care to Ms. Oliver by engaging in the extreme and outrageous conduct described hereinabove.

56.     It is reasonably foreseeable that Defendant White's actions would cause Ms. Oliver to suffer severe emotional distress because Ms. Oliver was not presented with an arrest warrant, not informed of the charges for which she was being arrested and suffered a broken arm at the hands of Defendant White, which was wholly unnecessary.

57.     As a direct and proximate result of Defendant White's actions, which he performed during the course and scope of his employment with the VCSO, Ms. Oliver has and continues to incur injuries and damages including, but not limited to, personal injuries including a broken arm and a diagnosis of Post-Traumatic Stress Disorder, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety and mental anguish. Ms. Oliver has also

incurred out of pocket expenses including, but not limited to, medical expenses and lost wages that were incurred as the direct result of her being injured due to Defendant White's actions. Ms. Oliver is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs as a result of Defendant Sheriff's actions and the deprivation of Ms. Oliver's constitutional rights.

## FOURTH CAUSE OF ACTION
### Negligence
*(Against Defendants Sheriff and White)*

58.    Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

59.    Defendants each owed Ms. Oliver a duty to perform the duties of their respective positions in a lawfully prudent manner that would not, directly or indirectly, unlawfully assault, batter, harm, oppress, harass, or otherwise subject Ms. Oliver to the unlawful, unconstitutional, and/or otherwise wrongful conduct alleged in this Complaint.

60.    Defendant White breached his duties to Ms. Oliver by, including, but not limited to, attempting to serve an arrest warrant at 2:00 a.m. without announcing himself as a law enforcement officer, using unreasonable force when threw Ms. Oliver to the ground breaking her arm, handcuffing her hands behind her back right after breaking her arm, leaving her in handcuffs for ten minutes while he called for backup due to his alleged emergency.

61.    Pursuant to the doctrine of *respondeat superior*, the Defendant Sheriff is liable for the acts and omissions of its employee, Defendant White, because at all times relevant hereto, Defendant White was acting within the course and scope of his employment with the VCSO.

62.    It was reasonably foreseeable that a Vance County citizen, such as Ms. Oliver, could suffer constitutional injuries or personal injuries due to Defendant White's habitual

propensity to ignore Defendant Sheriff's policies, procedures, and orders as well as orders from Defendant White's other superiors within the Sheriff's office. Defendant Sheriff's failure to take disciplinary action(s) against Defendant White for such repeated violations to, at a minimum, discourage or deter Defendant White from engaging in such unauthorized conduct during the course and scope of his employment resulted in Defendant Sheriff breaching his duties to the citizens of Vance County and Ms. Oliver.

63.     Defendants Sheriff and White's breaches proximately caused Ms. Oliver to be physically and emotionally harmed. As a direct and proximate result of Defendant White's actions, which are imputed to Defendant Sheriff, Ms. Oliver has and continues to incur injuries and damages including, but not limited to, personal injuries including a broken arm and a diagnosis of Post-Traumatic Stress Disorder, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety and mental anguish. Ms. Oliver has also incurred out of pocket expenses including, but not limited to, medical expenses and lost wages that were incurred as the direct result of her being injured due to Defendant White's actions. Ms. Oliver is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs as a result of Defendant Sheriff's actions and the deprivation of Ms. Oliver's constitutional rights.

## FIFTH CAUSE OF ACTION
### Assault
(*Against Defendant White*)

64.     Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

65.     The actions of Defendant White of including, but not limited to, throwing Ms. Oliver to the ground with enough power to fracture her arm, handcuffing her arms behind her back

immediately after he broke her arm and leaving her in this position for approximately ten minutes, were intentional acts of force that threatened Ms. Oliver with imminent bodily injury. Defendant White's actions also created in Ms. Oliver a reasonable apprehension of immediate harm, and actually caused her physical and mental harms.

66.     As a direct and proximate result of Defendant White's actions, which he performed during the course and scope of his employment with the VCSO, Ms. Oliver has and continues to incur injuries and damages including, but not limited to, personal injuries including a broken arm and a diagnosis of Post-Traumatic Stress Disorder, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety and mental anguish. Ms. Oliver has also incurred out of pocket expenses including, but not limited to, medical expenses and lost wages that were incurred as the direct result of her being injured due to Defendant White's actions. Ms. Oliver is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs as a result of Defendant Sheriff's actions and the deprivation of Ms. Oliver's constitutional rights.

**SEVENTH CAUSE OF ACTION**
**Negligent and Grossly Negligent Hiring, Training,**
**Supervision and Retention of Defendant White**
(*Against Defendant Sheriff*)

67.     Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

68.     Defendant Sheriff owes the citizens of Vance County the duties of, including, but not limited to, refraining from making personnel decisions with respect to his sheriff's deputies that constitute negligent or grossly negligent hiring, training, supervision, or retention decisions such that breach of any said duties could or would cause harm to the citizens.

69.     Defendant Sheriff, as the final law enforcement policymaking authority regarding hiring, supervising and discharging employees of the VCSO, made the following personnel decisions that constituted a breach of his duties and resulted in harm to Ms. Oliver:

   a.   Defendant Sheriff hired Defendant White with full knowledge that he had been terminated from three (3) previous law enforcement positions;

   b.   Defendant Sheriff hired Defendant White against the recommendation of the VCSO's hiring panel;

   c.   Defendant Sheriff assisted Defendant White in obtaining a waiver from the Commission, excusing Defendant White from attending BLET;

   d.   Defendant Sheriff failed to discipline Defendant White for violating VCSO policy regarding stopping and arresting citizens for minor traffic violations even though Defendant White continued to violate said VCSO procedures and direct orders from his supervisors;

   e.   Defendant Sheriff failed to discipline Defendant White after he blatantly lied regarding engaging his emergency blue lights during a traffic stop, as is required by VCSO policies and procedures;

   f.   Defendant Sheriff allowed Defendant White to continue patrolling Vance County with full knowledge that he was untrained, that he habitually violated VCSO policies and procedures and disobeyed directives from his supervisors, and that he lied about following VCSO policies and procedures; and

   g.   Such acts or omissions revealed through discovery.

70.     Defendant Sheriff owed a duty to Ms. Oliver to properly train his sheriff's deputies prior to allowing them to patrol the streets of Vance County.

71.     Defendant Sheriff breached this duty when he permitted Defendant White to begin patrolling Vance County without proper training. Specifically, Defendant White was improperly trained to execute arrest warrants.

72.     Defendant Sheriff further breached his duty when he assisted Defendant White in obtaining a waiver from the North Carolina Justice Commission to exempt him from BLET.

73. Defendant Sheriff had a duty to supervise their sheriff's deputies to ensure that they were performing their duties in a reasonable and lawful manner. Specifically, Defendant Sheriff had a duty to monitor the manner in which VCSO sheriff's deputies executed arrest warrants.

74. Defendant Sheriff breached this duty by failing to properly monitor Defendant White's execution of Ms. Oliver's arrest warrants.

75. Defendant Sheriff further breached this duty through his knowledge of Defendant White's aggressive and unreasonable policing tactics and nonetheless permitting him to perform his unreasonable and unconstitutional policing tactics unabated.

76. Defendant Sheriff's failure to properly train and supervise Defendant White proximately and actually caused Ms. Oliver to suffer physical, emotional, financial, and constitutional harm.

77. The harm suffered by Ms. Oliver was a reasonably foreseeable result of allowing an improperly trained and supervised sheriff's deputy, who previously demonstrated unreasonably aggressive policing tactics, to continue to execute arrest warrants in Vance County.

78. Defendant Sheriff's negligent training, supervision and retention of Defendant White proximately caused Ms. Oliver injuries and damages including, but not limited to, personal injuries including a broken arm and a diagnosis of Post-Traumatic Stress Disorder, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety and mental anguish. Ms. Oliver has also incurred out of pocket expenses including, but not limited to, medical expenses and lost wages that were incurred as the direct result of her being injured due to Defendant Sheriff's negligent acts or omission. Ms. Oliver is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages

including attorneys' fees and costs as a result of Defendant Sheriff's acts and omissions and the deprivation of Ms. Oliver's constitutional rights.

**EIGHTH CAUSE OF ACTION**
**Action for Official Bond**
(*Against Defendants Sheriff and Western Surety*)

79.     Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

80.     Upon information and belief, Defendant Sheriff procured an official bond as principal from Defendant Western Surety in the sum of $25,000.00 (the "Bond"). The Bond ensures that Defendant Sheriff and his employees shall faithfully perform all duties of the office of the Sheriff of Vance County.

81.     Defendant Western Surety joined with Defendant Sheriff as surety in the execution of the Bond and thereby undertook to be jointly and severally liable for the failure of Defendant Sheriff and his employees to faithfully perform the duties of his office as the Sheriff of Vance County.

82.     Defendant Sheriff's Bond was in full force and effect on October 22, 2018.

83.     Defendant White was acting within the scope and course of his employment as a Vance County sheriff's deputy and under color of Defendant Sheriff's office during his interactions with Ms. Oliver on October 22, 2018, as described herein above.

84.     The negligent and unlawful acts and omissions of Defendant White, as alleged herein, are imputed to Defendant Sheriff under the doctrine of *respondeat superior*, and constituted neglect, misconduct, misbehavior, and/or a breach of his official duties as a sheriff's deputy.

85.     Defendants Sheriff and Western Surety are liable to Ms. Oliver, pursuant to N.C. Gen. Stat. § 58-76-5, for unlawful acts and omissions committed by Defendant White against Ms. Oliver under color of the VCSO.

**NINTH CAUSE OF ACTION**
**Punitive Damages**
(*Against Defendant White*)

86.     Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

87.     Defendant White acted with either an evil motive or with reckless and wanton disregard for the rights of Ms. Oliver on October 22, 2018. Defendant White seized Ms. Oliver in an unlawful manner because he was upset that he was unable to write her a speeding ticket the night before. In order to punish her for his mistake in not having his citation pad, Defendant White violently dragged Ms. Oliver out of her home, while handcuffed, until she fell on the pavement near his vehicle. Defendant that picked her up off the ground and slammed her down with enough force to break her arm.

88.     Defendant White's unreasonable seizure and use of excessive force against Ms. Oliver were done with reckless and callous indifference to her civil rights, and therefore, Ms. Oliver is entitled to recover punitive damages from Defendant White pursuant to 42 U.S.C. § 1983.

89.     Further, Defendant White's actions constitute a conscious and intentional disregard for the rights and safety of others, including Ms. Oliver, which he knew or should have known were reasonably likely to result in injury. Therefore, Ms. Oliver in entitled to recover punitive damages from Defendant White pursuant to N.C. Gen. Stat. § 1D-15.

**NINTH CAUSE OF ACTION**
**Trespass and Violation of N.C. Gen. Stat. § 15A-401**

*(Against Defendant White)*

90.     Plaintiff reiterates, realleges, and reincorporates each and every paragraph above as if set forth fully herein.

91.     Defendant White trespassed onto Ms. Oliver's private property when he knocked on her door to arrest her without possession of a valid arrest warrant or copy of a valid arrest warrant in violation of N.C. Gen. Stat. § 15A-401(e)(1).

92.     N.C. Gen. Stat. § 15A-401(e)(1) provides that in order to arrest someone on private premises, the officer must 1) possess a warrant for the arrest of a person, 2) he must have reasonable cause to believe that the person to be arrested is present, and 3) he has given, or made a reasonable effort to give, notice of his authority and purpose to an occupant of the premises.

93.     Ms. Oliver was in possession of her home when Mr. Oliver entered her private property with the intention of arresting her without an arrest warrant on his person.

94.     Defendant White's entry onto Ms. Oliver's private property was unauthorized by Ms. Oliver.

95.     Defendant White did not possess an arrest warrant when he knocked on Ms. Oliver's residence door or when he led her out of her home and towards his patrol car.

96.     Defendant White did not make a reasonable effort to give notice of his authority and purpose to Ms. Oliver at her home. During his first visit to her home in the early hours of October 22, 2018, Defendant White knocked on Ms. Oliver's residence door, and he remained silent. This constituted trespass by Defendant White.

97.     When Defendant White knocked on Ms. Oliver's residence door later than evening, although he announced that he was there to arrest her, he refused to show her a copy of an arrest warrant even though she repeatedly requested to see it.

98.     Defendant White's unauthorized entry onto the private property of Ms. Oliver caused her damage when he utilized his position of authority and his statement that she was under arrest to lead her to his patrol car and then slam her to the ground and break her arm when she "went limp" out of fear.

99.     As a direct and proximate result of Defendant White's actions, Ms. Oliver has and continues to incur injuries and damages including, but not limited to, personal injuries including a broken arm and a diagnosis of Post-Traumatic Stress Disorder, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety and mental anguish. Ms. Oliver has also incurred out of pocket expenses including, but not limited to, medical expenses and lost wages that were incurred as the direct result of her being injured due to Defendant White's actions. Ms. Oliver is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs as a result of Defendant Sheriff's actions and the deprivation of Ms. Oliver's constitutional rights.

WHEREFORE, Plaintiff respectfully prays the Court:

a.      For a judgment in her favor for all compensatory and punitive damages recoverable by the Plaintiff against the Defendants, jointly and severally, where appropriate;

b.      For a trial by jury on all issues so triable;

c.      For all court costs and other fees allowed by law, including attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable federal or state law;

d.      That all amounts accrue interest at the prevailing legal rate;

e.      For all other, further relief as the Court deems just and appropriate.

Respectfully submitted,

**GREEN MISTRETTA LAW, PLLC**

/s/ Dawn T. Mistretta
Dawn T. Mistretta, N.C. Bar No. 31691
Lindsey A. Bullard, N.C. Bar No. 46664
1752 Heritage Center Drive, Suite 101
Wake Forest, NC 27587
T: (919) 278-7453
F: (855) 876-8893
dmistretta@gmlawyers.org
lbullard@gmlawyers.org
*Counsel for Plaintiff*